# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| MELODIA PHILLIPS o/b/o T.P., a minor, | ) |
| Plaintiff, | ) |
| vs. | ) Civil Action No. 09-987 (RBW) |
| DISTRICT OF COLUMBIA, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Melodia Phillips, the plaintiff in this civil case, brings this action on behalf of her son, T.P., seeking the reversal of a decision issued on May 23, 2008 by the District of Columbia Public Schools (the "DCPS"), in which T.P. was denied an award of compensatory education under the Individuals with Disabilities Education Act (the "IDEA"), 20 U.S.C. §§ 1400-1491 (2006). Currently before the Court are the plaintiff's motion for summary judgment and defendant District of Columbia's cross-motion for summary judgment.[1] After carefully considering the plaintiff's Amended Complaint, the plaintiff's Motion for Summary Judgment, the Defendants' Opposition to Plaintiffs' Motion for Summary Judgment, and Defendants' Cross-Motion for Summary Judgment, and all memoranda of law and exhibits submitted by the parties,[2] the Court concludes for the reasons that follow that it must deny without prejudice the

---

[1] For ease of reference, and unless otherwise noted, the Court refers to the District of Columbia and the District of Columbia Public Schools collectively as the "District" for purposes of this memorandum opinion.

[2] In addition to the aforementioned documents, the Court considered the following in rendering its decision: (1) the Plaintiff's Memorandum of Points and Authorities in Support of its Motion for Summary Judgment (the "Pl.'s Mem."); (2) the Defendant's Memorandum in Support of its Cross-Motion for Summary Judgment (the "Def.'s Mem.); (3) the Plaintiff's Statement of Material Facts (the "Pl.'s Facts"); (4) the Administrative Record (the "A.R."); and (5) the May 14, 2008 Administrative Hearing Transcript (the "Hr'g Tr.").

plaintiff's motion for summary judgment, deny without prejudice the defendant's cross-motion for summary, and remand the case to the administrative Hearing Officer for additional fact finding and a determination of what, if any, relief the plaintiff is entitled to receive on behalf of her son.

### I. BACKGROUND

The stated purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400 (d)(1)(A). "School districts must ensure that 'all children with disabilities residing in the State . . . who are in need of special education and related services,' are identified." Gellert v. Dist. of Columbia Pub. Sch., 435 F. Supp. 2d 18, 21 (D.D.C. 2006) (Kessler, J.) (quoting Branham v. Gov't of the Dist. of Columbia, 427 F.3d 7, 8 (D.C. Cir. 2005)). Once students "are identified, a 'team' [consisting of] the child's parents and select teachers, as well as a representative of the local educational agency with knowledge about the school's resources and curriculum, develops an 'individualized education program . . . for the child." Id. (quoting Branham, 427 F.3d at 8.) An individualized education program (the "Program") must, "at a minimum, 'provid[e] personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction.'" Id. (quoting Bd. of Educ. Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 203, (1982)).

T.P. is an eight-year old child attending the Katherine Thomas School (the "School"), a special education institution located in Rockville, Maryland. A.R. at 4. In April of 2004, when T.P. was approximately four-years old, he "developed a viral rhomboencephalitis . . . and was hospitalized at Children's Hospital" as a result of this illness. Id. at 6. On August 19, 2004, Dr.

Crystal Taylor-Davis, an employee of the DCPS, reported in her Medical Review of Records that because of his illness, it would be "appropriate" for T.P. to receive "the educational classification of Other Health Impairment." Id. at 6. An Other Health Impairment ("Impaired") classification is given to a student who has "limited strength, vitality, or alertness, including a heightened alertness with respect to environmental stimuli . . . that . . . [is] due to chronic or acute health problems," which in turn, "results in a limited alertness with respect to the educational environment[] that . . . adversely affects a child's educational performance." 34 C.F.R. § 300.8(c)(9)-(9)(ii) (2007).

In August of 2004, the plaintiff "provided the [District] with copies of T.P.'s [hospital records] and completed the necessary paperwork to begin the special education process." Pl.'s Facts ¶ 4. In September of 2004, "Ms. Phillips forwarded copies of evaluations, reports, and Dr. Taylor-Davis' recommendations to [the] DCPS and also requested [the] DCPS to complete several additional evaluations." Id. ¶ 12. In February of 2005, as a result of the District's failure to respond to the plaintiff's request for additional evaluations, the plaintiff filed an administrative due process complaint. Id. ¶ 13. Subsequently, the parties entered into a settlement agreement in which the District agreed to evaluate and determine T.P.'s eligibility for special education services and, if eligible, to develop an appropriate Program within thirty days. Id. The plaintiff then filed a second administrative due process complaint "on March 18, 2005 because [the District] failed to comply with the February 2005 settlement agreement," id. ¶ 15, resulting in a second agreement to convene a meeting regarding T.P.'s eligibility for special education services on April 25, 2005, id. ¶ 18. At that meeting, a representative for the District, Gloria Everett, "informed [the plaintiff] that [T.P.'s hospital records] were not appropriate and stated [that] additional assessments needed to be completed" before eligibility could be determined. Id. ¶ 19.

In a meeting with the plaintiff on September 22, 2005, Ms. Everett reasoned that because Dr. Taylor-Davis's review was more than a year old and conducted "prior to [T.P.'s] enrollment in school, and in light of [his] teacher's report that [T.P.] was performing at grade level[, the District] determined that Dr. Taylor-Davis should conduct another review of [T.P.'s] records." A.R. at 8. Dr. Taylor-Davis completed the second review of T.P.'s records and maintained that he was still eligible for special education services as an Impaired student because he

> [suffered] a severe brain insult, [and the d]ata supports the educational classification of [Impaired]. He continues to require Occupational Therapy and Speech/Language Therapy . . . [and a]s academic challenges increase, the emergence of problematic behaviors is quite possible. [T.P.] could benefit from a highly structured, enclosed classroom with a low[-]student[-]to teacher ratio.

Id.

On December 2, 2005, the plaintiff filed a motion for a preliminary injunction with this Court, seeking a final determination of T.P.'s eligibility for special education services. Id. at 9. On December 21, 2005, the District determined that T.P. did not meet the criteria for classification as Impaired and was therefore ineligible for special education services. Id. Before the Court could rule on the preliminary injunction request, a special master appointed to T.P.'s case placed him at the School in early 2006, which effectively resolved the issue of T.P.'s entitlement to special education services. Id. at 9.

On November 19, 2007, Dr. Denise White-Jennings, a school psychologist, conducted a Psychological Reevaluation of T.P. and concluded that "[T.P.'s] verbal comprehension and perceptual reasoning abilities were . . . both in the [l]ow [a]verage range," and that his overall "academic skills were [also] in the low average range[,] with the exception of reading comprehension[,] which was in the extremely low range." Id. at 9-10. Dr. White-Jennings further recommended that T.P. "should be considered for special education services as a[n Impaired] student . . . due to the ongoing impact of his diagnosed systematic rheumatoid

4

arthritis." Id. at 10. On November 15, 2007, District employee Tawana Hinton completed a Speech and Language Classroom Observation and Supplemental Testing evaluation and concluded that T.P. met "the criteria for speech and language intervention to address his auditory processing and reasoning skills deficits as well as his receptive and expressive language deficits." Id. She further found that "[T.P.] should receive one hour of intervention weekly." Id. On February 11, 2008, the plaintiff filed her third administrative due process complaint, "alleging that [the District had] 'denied [T.P.] access to a free appropriate public education by failing to timely evaluate [him] and determine his eligibility for special education and related services . . . and [by] failing to provide compensatory education for this failure.'" Id. at 4.

On March 10, 2008, the District convened a meeting and determined that T.P. "was eligible for special education services with a[n Impaired] classification . . . [but] that [he] did not require compensatory [education] services because he was progressing at [School]." Id. at 11. On April 25, 2008, a due process hearing regarding T.P.'s entitlement to compensatory education was convened, and Hearing Officer Terry Banks determined that there was "sufficient documentary evidence to show a violation of the IDEIA [and] that no testimonial evidence would be necessary."[3] Id. After the hearing was continued to May 14, 2008, Hearing Officer Banks reaffirmed in his decision that an IDEA violation had occurred with respect to T.P. Id. at 4, 11, 13. Hearing Officer Banks further stated that although T.P. had shown marked improvement in his communication and academic skills, he still "has difficulty acquiring and retaining information and continues to require one-on-one attention in a small classroom environment," and that he "has difficulty processing information and requires constant repetition." Id. at 11.

---

[3] On December 3, 2004, the IDEA was amended by the Individuals With Disabilities Education Improvement Act of 2004, now known as IDEIA. For ease of reference, and unless otherwise noted, the Court also refers to the IDEIA as the "IDEA" for the purposes of this memorandum opinion.

However, Hearing Officer Banks concluded that T.P. was not entitled to a compensatory education award because T.P.'s "proof as to the inability of [his current Program] to meet his needs is insufficient to meet his burden in several respects." Id. at 12. Specifically, Hearing Officer Banks disagreed with the plaintiff's witness at the hearing, Dr. Ida Jean Holman, concerning the proposed award of two-hundred and fifty five hours of additional tutoring because "her justification for increased services was unsupported by any objective criteria." Id. Additionally, Hearing Officer Banks asserted that because there was no request for compensatory services in 2006 or 2007, and that other specialists in contact with T.P. did not testify that additional services were necessary, the plaintiff did not meet her burden of proving entitlement to compensatory education in the amount proposed. Id. at 13.

The plaintiff subsequently filed her Complaint in this Court on May 27, 2009, which was later amended on June 12, 2009, alleging that Hearing Officer Banks erred when he determined that there was an IDEA violation, but refused to "award [T.P.] compensatory education services for the [District's] failure to provide T.P. with access to a free and appropriate public education." Plaintiff's Complaint at 51, Plaintiff's Amended Complaint at 51. The plaintiff essentially reiterates in her motion for summary judgment that because Hearing Officer Banks and the defendant conceded there was a violation of the IDEA that resulted in a denial of a free and appropriate public education, T.P. is entitled to two-hundred and fifty-five hours of compensatory education. Pl.'s Mot. at 13-19. The defendant counters in its cross-motion for summary judgment that the plaintiff has failed to prove that T.P. is entitled to an award of compensatory education. Def.'s Mem. at 10. More specifically, the defendant argues that Hearing Officer Banks' decision should be upheld because the testimony of the plaintiff's witnesses' at the hearing failed to demonstrate any educational deficit that requires a

compensatory education award of two-hundred and fifty-five hours of additional tutoring services. Id. at 12-14.

## II. STANDARD OF REVIEW

Summary judgment is proper where the pleadings, discovery, and affidavits demonstrate "that there is no genuine issue as to any material fact and that the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(1)(C)(2). The moving party has the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the pleadings or other parts of the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In assessing the motion for summary judgment, "the Court must draw 'all justifiable inferences' in the non-moving party's favor and accept the non-moving party's evidence as true." Banks ex rel. D.B. v. District of Columbia, No. 09-990, 2010 WL 2657238 at *3 (D.D.C. July 6, 2010) (Walton, J.) (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986)) (internal citation omitted). Nevertheless, the non-moving party cannot rely on "mere allegations or denials," but "must set forth specific facts showing that there is a genuine issue for trial." Burke v. Gould, 286 F.3d 513, 517 (D.C. Cir. 2002) (quoting Anderson, 477 U.S. at 248) (internal quotation marks omitted). Furthermore, "in ruling on cross-motions for summary judgment, the court shall grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed." Shays v. FEC, 424 F. Supp. 2d 100, 109 (D.D.C. 2006) (citation omitted).

In reviewing a Hearing Officer's decision in an IDEA case, the Court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as [it] determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). The Court's increased authority to

hear additional evidence and base its decision using a preponderance of the evidence standard indicates that "IDEA plainly suggests less deference [to the Hearing Officer's determination] than is conventional in administrative proceedings." Reid ex rel. Reid v. Dist. Of Columbia, 401 F.3d 516, 521 (D.C. Cir. 2005) (quoting Kerkam v. McKenzie, 862 F.2d 884, 887 (D.C. Cir. 1988)) (internal quotation marks omitted). However, the "party challenging the administrative determination must at least take on the burden of persuading the court that the Hearing Officer was wrong." Id. (quoting Kerkam, 862 F.2d at 887) (internal quotation marks omitted). If "no additional evidence is introduced [by the parties] in a civil suit seeking review of [an administrative decision], a motion for summary judgment operates as a motion for judgment based on the evidence comprising the record." Thomas v. Dist. of Columbia, 407 F. Supp. 2d 102, 109 (D.D.C. 2005) (Kollar-Kotelly, J.) (citing 20 U.S.C. § 1415(i)(2)(B); Dist. of Columbia v. Ramirez, 377 F. Supp. 2d 63, 66-67 (D.D.C. 2005)).

### III. LEGAL ANALYSIS

The issue before the Court is whether the plaintiff is entitled to a compensatory education award of two-hundred and fifty-five hours of additional tutoring services. This Court recently reiterated the principle in Reid, 402 F.3d at 524, stating that "if a hearing officer finds . . . that [a student] was denied a free appropriate public education[,] . . . then [the student] would be entitled to a compensatory education award," and once entitlement to an award is found, the hearing officer applies the Reid standard to create the compensatory award. Banks, 2010 WL 2657238 at *5-6 (internal citation omitted). In Reid, the District of Columbia Circuit held that "[i]n every case . . . the inquiry must be fact-specific and, to accomplish IDEA's purposes, the ultimate award must be reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place." 401 F.3d at 524 (emphasis added). However, even if entitlement to an award is shown

through a denial of a free and appropriate public education, "[i]t may be conceivable that no compensatory education is required for the denial of [a free and appropriate public education] . . . either because it would not help or because [the student] has flourished in his current placement . . . ." Thomas, 407 F. Supp. 2d. at 115. With this legal framework as its guide, the Court turns to the parties' respective motions for summary judgment.

The fact that both Hearing Officer Banks and the defendant conceded that there was a violation of the IDEA and a subsequent denial of a free and appropriate public education satisfies the plaintiff's burden of proving entitlement to a properly crafted compensatory award under Reid. A.R. at 11, Def.'s Mem. at 9. The District of Columbia Circuit established in Reid that the crafting of "compensatory education awards fit comfortably within the 'broad discretion' of courts fashioning and enforcing IDEA remedies." 401 F.3d at 523 (citing Florence County Sch. Dist. Four v. Carter By & Through Carter, 510 U.S. 7, 15-16 (1993)). Moreover, this Court has consistently held that when the IDEA is violated through a denial of a free and appropriate public education, the injured party is entitled to compensatory education. See The Mary McLeod Bethune Day Acad. Pub. Charter Sch. v. Bland, 534 F. Supp. 2d 109, 115 (D.D.C. 2008) (Kay, Mag. J.) ("Compensatory education is the remedy for a denial of [a free appropriate public education]," and therefore "if a parent presents evidence that her child has been denied a free and appropriate public education, she has met her burden of proving that [the child] is entitled to compensatory education."); see also Friendship Edison Pub. Charter Sch. Collegiate Campus v. Nesbitt ("Nesbitt I"), 532 F. Supp. 2d 121, 123 (D.D.C. 2008) (Facciola, Mag. J.) (stating that "[w]here a school system fails to provide special education or related services, a student is entitled to compensatory education" (citation omitted)); Banks, 2010 WL 2657238 at *5 (holding that if a plaintiff is denied a free and appropriate public education, her child "would be entitled to a reasonably calculated compensatory education award that meets the standards set forth in

Reid." (internal quotation marks and citation omitted)). Consequently, "the Reid standard only applies once a Hearing Officer has determined that compensatory education is warranted and [then it] must craft a compensatory education award . . . reasonably calculated to meet the student's needs." Mary McLeod, 534 F. Supp. 2d at 115. Stated differently, "[i]n IDEA litigation, the Hearing Officer first determines whether there is sufficient evidence of an IDEA violation that entitles the student to a compensatory education. If the Hearing Officer determines there was such a violation, then the hearing officer applies the Reid standard to craft [the requisite] award." Banks, 2010 WL 2657238 at *5 (internal citation omitted).

Here, there was an unequivocal determination by Hearing Officer Banks, supported by sufficient evidence, that there had been an IDEA violation and a subsequent denial of a free and appropriate public education for the period between Dr. Taylor-Davis' August 19, 2004 recommendation for special education services and T.P.'s placement at the School in March of 2006 , thereby entitling him to an award of compensatory education in accordance with Reid. A.R. at 11, Def.'s Mem. at 9. Thus, the question that remains is how to craft an award that would adequately compensate T.P. for the denial of the free and appropriate public education he was entitled to from August of 2004 to March of 2006.

As noted above, a compensatory award fashioned by the Hearing Officer must be the result of a "fact-specific" inquiry that is "reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place." Reid, 401 F.3d at 524. This means that the plaintiff has the burden of "propos[ing] a well-articulated plan that reflects [the student's] current education abilities and needs and is supported by the record." Friendship Edison Pub. Charter Sch. Collegiate Campus v. Nesbitt ("Nesbitt II"), 583 F. Supp. 2d 169, 172 (D.D.C. 2008) (Facciola, Mag. J.). Furthermore, the Court must be wary of "mechanical" calculations because a

"reasonable calculation" of a compensatory award "must be qualitative, fact-intensive, and above all tailored to the unique needs of the disabled student." Branham, 427 F.3d at 9 (citing Reid, 401 F.3d. at 524) (internal quotation marks omitted); but see Stanton ex rel. K.T. v. Dist. of Columbia, 680 F. Supp. 2d 201, 206-207 (D.D.C. 2010) (Huvelle, J.) (holding that formulaic calculations are not per se invalid, so long as the evidence provides a sufficient basis for an "individually-tailored assessment") (citing Brown ex rel. E.M. v. Dist. of Columbia, 568 F. Supp. 2d 44, 53-54 (D.D.C. 2008) (Bates, J.) (internal quotation marks omitted)). However, "Reid certainly does not require [a] plaintiff to have a perfect case to be entitled to a compensatory education award"; on the contrary, "[o]nce a plaintiff has established that she is entitled to an award, simply refusing to grant one clashes with Reid." Stanton, 680 F. Supp. 2d at 207. Additionally, "a Hearing Officer may 'provide the parties additional time to supplement the record' if she believes there is insufficient evidence to support a specific award," id. (quoting Nesbitt I, 532 F. Supp. 2d. at 125), but simply "[c]hoosing instead to award plaintiff nothing does not represent the 'qualitative focus' on [the child's] 'individual needs' that Reid requires," id.

The plaintiff relies primarily on the testimony of Dr. Holman as the basis for concluding that compensatory education is necessary to remedy T.P.'s denial of a free and appropriate public education and the resulting educational deficit. Pl.'s Mot. at 17. Dr. Holman testified that T.P.'s 2008 educational program should have included an additional two-hundred and fifty-five hours of individual tutoring services, or five hours of tutoring per week for fifty-one weeks of missed services, based upon "research studies" and the proposed benefits of early intervention. A.R. at 12. When asked about the basis for her recommendation, Dr. Holman testified that fifty-one weeks of tutoring was appropriate because "that was the time that he received no services—or basically received no services . . . [a]nd it's just basically a year, which is 51 weeks." Hr'g Tr. at

120-21. Dr. Holman further explained, "Yes, I would think [five] hours [per week] should be very—would be adequate. Probably, you know, the problem is he probably missed more tha[n] that, but five hours [per week] if it were one-on-one would be—could probably be appropriate." Id. at 121.

Dr. Holman did not provide any testimony, however, as to how these additional hours of tutoring would "provide the educational benefits that likely would have accrued" had these services been "supplied in the first place." Reid, 401 F.3d at 524. Indeed, Dr. Holman testified at the administrative hearing that T.P., at the time he was denied a free and appropriate public education, "might have missed developmental milestones that would have been very difficult to recoup, particularly language ones." Hr'g Tr. at 119 (emphasis added). Thus, by Dr. Holman's own words, there is no evidence that the additional two-hundred and fifty-five hours of individual tutoring services would provide T.P. with the free appropriate and public education benefits that he was entitled to between August 19, 2004 and his placement at the School in March of 2006; rather, she testified only that these services would be "appropriate" because it was the amount of "time that he received no services—or basically received no services." A.R. at 120-21. Dr. Holman's testimony, therefore, does nothing more than advocate "a presumption that each hour without [a free and appropriate public education] entitles [T.P.] to one hour of compensatory instruction," and the Court must reject this calculation because this "cookie-cutter" approach "runs counter to both the 'broad' discretion afforded by [the] IDEA's remedial provision and the substantive [free and appropriate public education] standard that provision is meant to enforce." Reid, 401 F.3d at 523.

However, in light of the fact that the plaintiff has demonstrated her son's entitlement to a compensatory award, this Court is not prepared to prematurely shut the door on her claim for relief. To be sure, it is entirely conceivable that "no compensatory education is required for the

denial of" a free and appropriate public education because the alleged deficiencies suffered by T.P. may have already been mitigated (or even totally alleviated) by his placement at the School. See Thomas, 407 F. Supp. 2d at 115. But as another member of this Court noted in Stanton, "Reid certainly does not require [the] plaintiff to have a perfect case to be entitled to a compensatory education award[,]" and that "a Hearing Officer may 'provide the parties additional time to supplement the record' if she believes there is insufficient evidence to support a specific award." Stanton, 680 F. Supp. 2d at 207. Given the Hearing Officer's finding that T.P. was denied a free and appropriate public education between August of 2004 and March of 2006, and that there is evidence in the record supporting a finding that T.P. may have suffered a setback in his educational development as a result of this denial, the Court concludes that the Hearing Officer should provide the plaintiff with an additional opportunity to supplement the record with evidence necessary to support a compensatory award consistent with Reid.[4] The Court finds it necessary, therefore, to remand this case to the Hearing Officer for further proceedings consistent with the observations set forth in this Memorandum Opinion. To ensure the prompt resolution of this matter, the Court expects that these supplemental proceedings will be completed no later than sixty days from the issuance of this decision.

## IV. CONCLUSION

The Court concludes that it must deny without prejudice the plaintiff's motion for summary judgment, as well as the defendant's cross-motion for summary judgment. Although the plaintiff has established that T.P. was denied a free and appropriate public education, she has failed to present evidence that would allow the Hearing Officer or the Court to properly craft a

---

[4] Of course, if on remand the plaintiff is unable to provide the Hearing Officer with additional evidence that demonstrates that additional educational services are necessary to compensate T.P. for the denial of a free and appropriate public education between August of 2004 and March of 2006, then the Hearing Officer may conclude that no compensatory award should issue.

compensatory award that comports with the IDEA and the standard created by Reid and its progeny. Therefore, the Court remands this case to the administrative Hearing Officer to allow the plaintiff to supplement the record in order to establish a reasonably calculated and individually-tailored compensatory education award that demonstrates a causal relationship between T.P.'s current educational deficits and his earlier denial of a free and appropriate public education. If the plaintiff fails to meet this obligation, or if the Hearing Officer finds that T.P.'s placement at the School mitigated the detrimental effects resulting from the denial of a free and appropriate public education, then the Hearing Officer is free to determine that no compensatory services can be awarded or that the award proposed by the plaintiff should be modified.

**SO ORDERED** this 13th day of September, 2010.[5]

REGGIE B. WALTON
United States District Judge

---

[5] An order will be issued contemporaneously with this memorandum opinion (1) denying the Plaintiff's Motion for Summary Judgment, (2) denying the Defendant's Cross-Motion for Summary Judgment without prejudice, (3) remanding the case to the Hearing Officer, without prejudice, for further fact finding and a relief determination, and (4) directing the parties to appear before the Court for a status conference at 2:00 p.m. on November 19, 2010, for the purpose of having the parties apprise the Court as to the status of the agency proceedings.