UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MELODIA PHILLIPS o/b/o T.P., a minor, | ) ) ) |  |
| Plaintiff, | ) ) |  |
| v. | ) ) | Civil Action No. 09-987 (RBW) |
| DISTRICT OF COLUMBIA, et al., | ) ) ) |  |
| Defendants. | ) ) |  |

**MEMORANDUM OPINION**

Melodia Phillips, the plaintiff in this case, brings this action on behalf of her son, T.P., seeking compensatory education for him under the Individuals with Disabilities Education Act (the "IDEA"), 20 U.S.C. §§ 1400-1491 (2006). See First Amended Complaint for Declaratory Judgment, Injunctive and Other Relief ¶¶ 46-55. Currently before the Court are the plaintiff's motion for summary judgment and the defendants' cross-motion for summary judgment. Upon careful consideration of the parties' submissions,[1] the Court concludes for the following reasons that it must deny the plaintiff's motion and grant the defendants' cross-motion.

**I. BACKGROUND**

This is the latest chapter in a protracted effort by the plaintiff to ensure that her son, T.P., receives an adequate education in the wake of his 2004 diagnosis of having juvenile rheumatoid arthritis. Pl.'s Facts ¶¶ 1-12. At this advanced stage of the litigation, the following facts are

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Plaintiffs' Statement of Material Facts that Are Not in Dispute ("Pl.'s Facts"); (2) the Plaintiffs' Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Summary Judgment ("Pl.'s Mem."); (3) the defendants' Memorandum in Support of Defendant's Cross Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment ("Defs.' Mem."); (4) the Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant's Cross Motion for Summary Judgment and in Reply to Defendant's Opposition to Plaintiff's Motion for Summary Judgment ("Pl.'s Reply"); (5) the Defendant's Reply to Plaintiffs' Opposition to Defendant's Cross-Motion to for [sic] Summary Judgment ("Defs.' Reply"); and (6) the Administrative Record ("A.R.").

already established and accepted by both parties: T.P. has a medical condition that entitles him to a "free appropriate public education that emphasizes special education and related services designed to meet [his] unique needs and prepare [him] for further education, employment, and independent living" ("FAPE") under the IDEA, 20 U.S.C. § 1400(d)(1)(A). See Defs.' Mem. at 13; Pl.'s Facts ¶¶ 4, 8, 10. The defendants denied T.P. a FAPE from August, 2004 to March, 2006. Defs.' Mem. at 13; Pl.'s Facts ¶¶ 4-8. T.P. now has access to a FAPE, at the defendants' expense, through his education at the Katherine Thomas School, a special education school, and has had access to those services since his enrollment there in 2006. Pl.'s Facts ¶¶ 1, 8; A.R. at 1076. The only remaining question in this case is whether T.P is entitled to "compensatory education" for harm caused by the previous denial of services.[2]

In a prior opinion, this Court held that the plaintiff had thus far "failed to present evidence that would allow the Hearing Officer or the Court to properly craft a compensatory award that comports with the IDEA" and consequently remanded the case to the Hearing Officer for further development of the factual record. Phillips ex rel. T.P. v. Dist. of Columbia, 736 F. Supp. 2d 240, 250 (D.D.C. 2010). To that end, the Hearing Officer convened a hearing on November 16, 2010. A.R. at 1064. The plaintiff called three witnesses from the Katherine Thomas School to testify about T.P.'s condition: the school's education director, an occupational therapist, and a speech-language pathologist. Id. The witnesses testified that T.P. continues to struggle with his disability at the special education school, see A.R., Transcript of November 16, 2010 Hearing ("November 16, 2010 Hr'g Tr.") at 46-185, and indicated that it was possible, but not certain, that his struggles stem from the original denial of a FAPE, id. at 133 (testimony of occupational therapist) ("[L]ack of movement in younger years can certainly be a piece leading

---

[2] The full factual background of the case is recounted in the Court's earlier opinion. See Phillips ex rel. T.P. v. Dist. of Columbia, 736 F. Supp. 2d 240, 243-46 (D.D.C. 2010).

to that kind of deficit"); id. at 153-58 (testimony of occupational therapist) (concluding that T.P. "lost a lot of range of motion and skills" during the 18 months without occupational therapy, but explaining that "it's very difficult to know how [T.P.] would have responded [to earlier treatment,] or if what I'm saying now is a result of that lack of services or just a result of the disability"); id. at 172-73 (testimony of speech-language pathologist) ("I can't make any statements about [how T.P. would have responded to earlier treatment]. All I can say is that children usually do make progress with early intervention services."). The plaintiff also presented a compensatory education plan created by the witnesses and other staff at the Katherine Thomas School. A.R. at 763-97. The Hearing Officer found all three witnesses credible, id. at 1079, but concluded that the witnesses "did not establish that the student's current deficits are related to, much less the result of, a denial of FAPE," id. at 814.

      Instead, the Hearing Officer determined that the case would require "an evaluator or team of evaluators who possess knowledge and expertise in childhood development" in order "to ascertain how the lack of early intervention impacted the Student or any student with similar disabilities." Id. at 815. The Hearing Officer instructed each party to propose three evaluators or teams of evaluators, from which one would be chosen to evaluate the student at the defendants' expense. Id. at 816. The defendants opposed the Hearing Officer's plan, and moved this Court for an "Order of Clarification" that appointing an independent evaluator at the defendants' expense was outside the scope of the Hearing Officer's authority. Id. at 821-22. The Court denied the motion, holding that, "[t]o ensure that the plaintiff has been provided an adequate opportunity to supplement the record with . . . evidence, the Hearing Officer must be free to order any relief that she believes would assist the plaintiff in developing her case for an award of compensatory education." Id. at 822. Following the Court's ruling, the defendants proposed

three evaluators to the Hearing Officer, id. at 824-46, and the plaintiff proposed five, id. at 853. The Hearing Officer rejected the defendants' evaluators, id. at 852-53, and instead selected Dr. William Ling, a clinical psychologist proposed by the plaintiff, to conduct the evaluation, id. at 856.

Dr. Ling evaluated T.P. and prepared a 42-page report on T.P.'s condition, see id. at 868-909, and he orally presented his findings at a second hearing on April 8, 2011.  See A.R., Transcript of April 8, 2011 Hearing ("April 8, 2011 Hr'g Tr.") at 34-69.  Dr. Ling testified that "[t]he question of whether or not [T.P.'s] issues were a result of any failure on the part of [the defendants] is a problematic question."  Id. at 38.  He found that, during the 2004-2006 denial period, T.P. "was receiving services from [the] Hospital for Sick Children approximately three to four times a week."  Id. at 39.  "Given the fact that [T.P.] was showing speech and language issues by the time of July 2005," Dr. Ling explained, "the testing data would suggest that—and the record would suggest that he was showing these difficulties even despite a level of service that was being given to him."  Id.   From this, Dr. Ling concluded that "even if [the defendants] had identified [T.P.] as being eligible for services [from the outset], chances are he would have gotten that level of service which is approximately equivalent to the level of service he was receiving at [the] Hospital for Sick Children throughout that period of time," and thus that "it's very difficult to identify a compensatory education plan."  Id. at 40.

At the conclusion of the April 8 hearing, the parties and Hearing Officer discussed a claim by the plaintiff that she was entitled to reimbursement for expenses she incurred personally while seeking replacement services for the services denied by the defendants during the 2004-2006 period—a claim which, apparently, had been raised at some point shortly before the hearing.  See id. at 70-92.  The Hearing Officer determined over the defendants' objection that

any reimbursement claims were long since waived, id. at 76, that Dr. Ling would have to be consulted again to determine whether the bills presented by the plaintiff were related to the procedures that Ling found had mitigated the damage caused by the denial of a specialized education, id. at 71, 73.  After reviewing the plaintiff's complete accounting of personal expenditures to be reimbursed, A.R. at 935-38, and the medical documents supporting those claims, id. at 939-90, Dr. Ling concluded that all of the services obtained independently by the plaintiff were provided by the National Integrated Health Associations, "a clinic which specializes in . . . alternative medical treatments . . . to augment treatment provided through allopa[th]ic or Western medical interventions," id. at 999.  Those treatments, he explained, were not "recommended or prescribed for [T.P.] through the services offered from [the] Hospital for Sick Children," and it was "highly unlikely that, on its own, [the defendants], or any public school, would offer access to [them]."  Id.  Thus, he made "no connection between what . . . was identified as needing to be offered to [T.P.] over the period of 19 August 2004 to February 2006, and the invoices/receipts provided."  Id.[3]

The parties presented closing arguments at a final hearing on January 12, 2012, id. at 1068, and the Hearing Officer issued her opinion on February 23, 2012, id. at 1063-83.  The Hearing Officer found that the plaintiff was not entitled to compensatory education because she failed to "describe how the recommended services would address the deficits that resulted from the denial of [a] FAPE, or even identify any deficits that resulted from the denial . . . ."  Id. at 1082.  The Hearing Officer further found that the plaintiff was not entitled to reimbursement of personal expenses because she "failed to present any evidence or testimony to establish that the services described in the treatment records and invoices were provided to [T.P.], or that the same

---

[3] These conclusions are part of the record only as described in a letter from Dr. Ling to the Hearing Officer. A.R. at 999-1000.  While Dr. Ling apparently prepared a more extensive report of his findings, "[n]either party entered this report into evidence."  Id. at 1068 n.15.

5

services that the Neuropsychology Expert found had ameliorated the harm from the denial of [a] FAPE." Id. at 1083.

The parties have now filed cross-motions for summary judgment. The plaintiff asks the Court to overturn the Hearing Officer's decision, arguing that the testimony of the three witnesses called at the November 16, 2010 hearing is sufficient evidence to support an order of compensatory education, Pl.'s Mem. at 8-13; that the Hearing Officer failed to consider important elements of Dr. Ling's testimony, id. at 13-14; that the Hearing Officer improperly delegated the decision-making process to Dr. Ling, id. at 14; and that reimbursement of personal expenses is appropriate because the services obtained by the plaintiff were necessary to place T.P. in the same position he would have been in but for the denial of a FAPE, id. at 15-16. The defendants, on the other hand, contend that the plaintiff's witnesses failed to provide a concrete link between the plaintiff's compensatory education plan and the harm caused by the original FAPE denial, Defs.' Mem. at 13-14; that the Hearing Officer's consideration of Dr. Ling's testimony was thorough and not inappropriately deferential, id. at 15-17; and that the plaintiff forewent repeated opportunities to provide proper evidence to support her claim for reimbursement, id. at 17-19.

## II.  STANDARD OF REVIEW

Summary judgment is proper when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In IDEA cases in which "neither party seeks to present additional evidence, a motion for summary judgment 'operates as a motion for judgment based on the evidence comprising the record.'" Parker v. Friendship Edison Pub. Charter Sch., 577 F. Supp. 2d 68, 72 (D.D.C. 2008) (citations omitted); Phillips, 736 F. Supp. 2d at 246.

The IDEA permits "any party aggrieved by the findings and decision" of a hearing officer to "bring a civil action" in state or federal court. 20 U.S.C. § 1415(i)(2)(A). The reviewing court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). Under this standard, the reviewing court owes the Hearing Officer "'less deference than is conventional' in administrative proceedings." Reid ex rel. Reid v. Dist. of Columbia, 401 F.3d 516, 521 (D.C. Cir. 2005) (quoting Kerkam v. McKenzie, 862 F.2d 884, 887 (D.C. Cir. 1989) ("Kerkam I"). And "a hearing decision 'without reasoned and specific findings deserves little deference.'" Id. (quoting Kerkam v. Superintendent, D.C. Pub. Schs., 931 F.2d 84, 87 (D.C. Cir. 1991) ("Kerkam II ").

Nevertheless, "the provision that a reviewing court base its decision on the 'preponderance of the evidence' is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley, 458 U.S. 176, 206 (1982) (internal citations omitted). The party challenging a hearing officer's determination must "at least take on the burden of persuading the court that the hearing officer was wrong, and . . . a court upsetting the officer's decision must at least explain its basis for doing so." Reid, 401 F.3d at 521 (quoting Kerkam I, 862 F.2d at 887). "'[F]actual findings from the administrative proceeding are to be considered prima facie correct.'" Roark ex rel. Roark v. Dist. of Columbia, 460 F.Supp.2d 32, 38 (D.D.C. 2006) (quoting S.H. v. State–Operated Sch. Dist. of the City of Newark, 336 F.3d 260, 270 (3d Cir. 2003)). A court must "defer to the [hearing officer's] factual

7

findings unless it can point to contrary nontestimonial extrinsic evidence on the record." Savoy v. Dist. of Columbia, 844 F. Supp. 2d 23, 30 (D.D.C. 2012) (quoting S.H., 336 F.3d at 270).

### III. ANALYSIS

The stated purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). To achieve this guarantee, the statute requires states and the District of Columbia to, at a minimum, "provid[e] personalized instruction with sufficient support services to permit the child to benefit educationally." Rowley, 458 U.S. at 203. The special instruction and services "must be provided at public expense, must meet the State's educational standards, must approximate the grade levels used in the State's regular education, and must comport with the child's [individualized educational program]." Id.

In this Circuit, a student can receive compensatory education as a remedy for an IDEA violation. See Reid, 401 F.3d at 523 ("[W]e therefore join our sister circuits and hold that compensatory education awards fit comfortably within the 'broad discretion' of courts fashioning and enforcing IDEA remedies.") (citations omitted). "Compensatory education" is a "replacement of education services the student should have received in the first place." Id. at 518. In cases in which a compensatory education is sought, "the hearing officer first determines whether there is sufficient evidence of an IDEA violation that entitles the student to a compensatory education." Banks ex rel. D.B. v. Dist. of Columbia, 720 F. Supp. 2d 83, 90 (D.D.C. 2010) (citation omitted). "If the hearing officer determines there was such a violation, then the hearing officer applies the Reid standard to craft an award." Id. (citation omitted).

Under the Reid standard, "the ultimate award must be reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place." Reid, 401 F.3d at 524. The determination of the award is "a fact specific exercise of discretion by either the district court or a hearing officer." Id. "Just as [individualized education plans] focus on disabled students' individual needs, so must awards compensating past violations rely on individualized assessments." Id. Thus, courts should not accept "cookie-cutter approach[es]" based on "hour-for-hour formula[s]" to craft appropriate remedies, id. at 523, and instead should employ a "flexible approach" that "will produce different results in different cases depending on the child's needs," id. at 524.

"'Even if entitlement to an award is shown through a denial of a free and appropriate public education, it may be conceivable that no compensatory education is required for the denial of a FAPE either because it would not help or because the student has flourished in his current placement.'" Cousins v. Dist. of Columbia, 880 F. Supp. 2d 142, 145 n.3 (D.D.C. 2012) (citation and brackets omitted); accord Johnson v. Dist. of Columbia, No. 11-0894, 2012 WL 3758240, at *8 (D.D.C. Feb. 15, 2012), rep. & rec. adopted, 873 F. Supp. 2d 382 (D.D.C. 2012); Gill v. Dist. of Columbia, 751 F. Supp. 2d 104, 113 (D.D.C. 2010), aff'd, 2011 WL 3903367 (D.C. Cir. Aug. 16, 2011); Anthony v. Dist. of Columbia, 463 F. Supp. 2d 37, 44 (D.D.C. 2006); Thomas v. Dist. of Columbia, 407 F. Supp. 2d 102, 115 (D.D.C. 2005); Wheaten v. Dist. of Columbia, No. 09-986, 2010 WL 2990282, at *4 (D.D.C. July 26, 2010), aff'd, 2010 WL 5372181 (D.C. Cir. Dec. 28, 2010). Consistent with this principle, the Court noted in its prior opinion in this case that, "if on remand the plaintiff is unable to provide the Hearing Officer with additional evidence that demonstrates that additional educational services are necessary to

compensate T.P. for the denial of a free and appropriate public education between August of 2004 and March of 2006, then the Hearing Officer may conclude that no compensatory award should issue." Phillips, 736 F. Supp. 2d at 249 n.4.[4]

In light of the current legal authority on the subject, the Court cannot say that the Hearing Officer's decision was incorrect. Applying Reid, the Hearing Officer found that "no compensatory education is required to compensate [T.P.] for the denial of [a] FAPE because any deficiencies he suffered already have been mitigated." A.R. at 1082. Under this reasoning, since T.P.'s deficiencies were already mitigated, he is in "the same position [he] would have occupied but for the school district's violations of IDEA." Reid, 401 F.3d at 518. This decision was not "without reasoned and specific findings." Id. at 521 (quoting Kerkam II, 931 F.2d at 87). The Hearing Officer specifically considered all of the submitted evidence in her final opinion, A.R. at 1081-83, and made detailed factual findings regarding T.P.'s condition, id. at 1069-79. And her ultimate conclusion that T.P.'s current difficulties do not stem from the original denial of a FAPE is supported directly by the testimony of Dr. Ling. See A.R., April 8, 2011 Hr'g Tr. at 40.

The plaintiff's arguments to the contrary are insufficient to justify reversal of the Hearing Officer's decision. The testimony of the three witnesses from the Katherine Thomas School is, at best, equivocal. See, e.g., A.R., November 16, 2010 Hr'g Tr. at 153-58 (testimony of occupational therapist) (concluding T.P. "lost a lot of range of motion and skills" during the eighteen months without occupational therapy, but explaining that "it's very difficult to know how [T.P.] would have responded [to earlier treatment,] or if what I'm saying now is a result of that lack of services or just a result of the disability"); id. at 172-73 (testimony of speech-

---

[4] The plaintiff argues that granting no award in this case is impossible because "[o]nce a plaintiff has established that she is entitled to an award, simply refusing to grant one clashes with Reid." Pl.'s Mem. at 12 (quoting Stanton ex rel. K.T. v. Dist. Of Columbia, 680 F. Supp. 2d 201, 206-07 (D.D.C. 2010)). However, the weight of authority in this Circuit (cited above) recognizes that an award of compensatory education is not mandatory in cases where a denial of a FAPE is established.

10

language pathologist) ("I can't make any statements about [how T.P. would have responded to earlier treatment]. All I can say is that children usually do make progress with early intervention services."). While the testimony could possibly be read to support an award of compensatory education, it is not the type of "contrary nontestimonial extrinsic evidence on the record" that warrants overturning a hearing officer's decision. Savoy, 844 F. Supp. 2d at 30 (quoting S.H., 336 F.3d at 270). Nor does the testimony of those three witnesses, even read generously to imply that T.P.'s current struggles are linked to the original denial of a FAPE, comprise the full weight of evidence in this case; Dr. Ling's testimony supports the opposite conclusion, and does so with much more certainty. See A.R. at 868-909.

The plaintiff's criticism of the Hearing Officer's treatment of Dr. Ling's testimony is also unpersuasive. First, the plaintiff attaches undue significance to Dr. Ling's isolated comment that "whether or not [T.P.] was receiving specialized instruction [during the denial period] . . . is unclear." A.R., April 8, 2011 Hr'g Tr. at 41. The plaintiff is correct that, if T.P. were not receiving specialized instruction during the denial period, the Hearing Officer's mitigation finding would be considerably weakened. But uncertainty about whether services were provided does not equate to the absence of any services. Evidentiary perfection is unlikely in any case, let alone a case involving the reconstruction of a complicated, nine-year-long history. Both Dr. Ling and the Hearing Officer ultimately concluded, after careful consideration of the full body of evidence, that T.P. was receiving specialized instruction during the denial period. See id. at 42 (testimony of Dr. Ling) ("However, if you look at the record, what the record suggests is that he was receiving some sort of specialized instruction during the course of the time he was at the Kennedy Institute."); A.R. at 1072, ¶ 10 (decision of Hearing Officer) ("[T]he student received some specialized instruction."). And that finding has adequate foundation in the record. See,

e.g., id. at 8 (Hospital for Sick Children "discharge summary" references services devoted to "educational goals"); id. at 141 (psychological evaluation references T.P.'s experiences in a specialized classroom at the Kennedy Institute).  Second, the plaintiff's claim that "the Hearing Officer relied on Dr. Ling's report to the exclusion of making a separate determination," Pl.'s Mem. at 14, conflicts with the administrative record below.  The Hearing Officer considered separately and thoroughly the other evidence presented, see A.R. at 1078-79, ¶¶ 34-41; id. at 1081-82, and relied on Dr. Ling's testimony only for its factual determinations, drawing the ultimate legal conclusion herself, id. at 1082-83.  Notably, it was the plaintiff who proposed Dr. Ling as an expert, id. at 853-54, and only questions the Hearing Officer's reliance on that testimony now that it undermines her litigation position.

It also bears emphasizing that the Hearing Officer repeatedly "'provide[d] the parties additional time to supplement the record.'"  Stanton ex rel. K.T. v. Dist. of Columbia, 680 F. Supp. 2d 201, 207 (D.D.C. 2010) (quoting Friendship Edison Pub. Charter Sch. Collegiate Campus v. Nesbitt, 532 F. Supp. 2d 121, 125 n.5 (D.D.C. 2008)).  She specifically advised the plaintiff that her evidentiary support was insufficient at the November 16, 2010 hearing, A.R. at 1065; ordered the defendants to incur the cost of supplementing the evidence with a new expert evaluation, id. at 1065-66; selected the plaintiff's proposed expert (Dr. Ling) over the defendants', id. at 1066; and, at the conclusion of that expert's testimony, denied the defendants' motion for a directed finding because the plaintiff had not yet rested her case and could still present additional evidence, id. at 1068.  At each stage the plaintiff failed to cure her evidentiary deficiency.  This failure continues in the current proceeding, where, despite the IDEA's requirement that this Court "hear additional evidence at the request of a party," 20 U.S.C. §

1415(i)(2)(B) (emphasis added), the plaintiff makes no such request and instead continues to rely on the same testimony rejected by the Hearing Officer below.

Finally, the Court turns to the plaintiff's claim for reimbursement. This claim comes with a host of possible problems, including whether it was raised too late and was thus waived under the statute of limitations; whether the services obtained by the plaintiff are non-compensable because they would have been unavailable from the defendants even under a fully realized specialized education program; and whether the kind of medical services obtained by the plaintiff are even covered by the IDEA. The Hearing Officer rejected the claim for a simpler reason: that the plaintiff "failed to present any evidence or testimony to establish that the services described in the treatment records and invoices were provided to the Student, or that the same services that the Neuropsychology Expert found had ameliorated the harm from the denial of [a] FAPE." A.R. at 1083. Instead, the evidence submitted by the plaintiff consisted of an assortment of medical invoices, with no indication of how they were connected to harm caused by the denial of a FAPE. Id. at 935-90. Because the plaintiff has presented no new evidence on this issue, the reasoned decision of the Hearing Officer on this issue will be affirmed.[5]

### IV. CONCLUSION

For the foregoing reasons, the Court concludes that the plaintiff has not met her "burden of persuading the court that the hearing officer was wrong." Reid, 401 F.3d at 521 (quoting Kerkam I, 862 F.2d at 887), and that the plaintiff therefore is entitled to neither compensatory education nor reimbursement of services obtained personally for her son, T.P. Accordingly, the

---

[5] The plaintiff argues that the Hearing Officer erred in relying on Dr. Ling's finding that the services obtained would never have been offered by the defendants. Pl.'s Mem. at 15. While this testimony did concern the Hearing Officer, see A.R. at 1083 n.183, she ultimately decided the issue on other grounds—that the plaintiff had failed to present evidence linking the services obtained in any way to the denial of a FAPE, see id. at 1083. The plaintiff fails to address this conclusion.

Court will deny the plaintiff's motion for summary judgment and grant the defendants' motion for summary judgment.

**SO ORDERED** this 25th day of March, 2013.[6]

REGGIE B. WALTON<br>United States District Judge

---

[6] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.